UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **LEYLA O. AGUILAR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| *vs.* ) | **CAUSE NO. 1:12-cv-664-SEB-DKL** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Leyla Aguilar applied for a declaration of a period of disability and for benefits under the disability insurance benefits and supplemental security income programs of the Social Security Act for a disability that she claims began in November 2007.  She alleges that she is disabled due to degenerative disc disease, all-body arthritis, fibromyalgia, GERD (gastroesophageal reflux disease), major depressive disorder, and anxiety disorder with weekly panic attacks.  (R. 142, 203.)  She alleges that these impairments cause functional limitations due to constant all-body pain, deficient concentration and memory, insomnia, extreme fatigue, dizziness, blurry vision, and various exertional limitations.  (*Id.*)  After the defendant Commissioner finally denied her application, she filed this suit seeking judicial review of that decision.  The Honorable Sarah Evans Barker, district judge, referred the issues presented in this Cause to this magistrate judge for submission of a report and recommendation as to their disposition.  *Order Referring Matter to Magistrate Judge* [dkt. 18].  This Report and Recommendation

fulfills that referral.

## Standards of review and disability

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined

by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level,

then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

**Procedural background**

After Ms. Aguilar's application was denied by the state agency on initial and reconsideration reviews, (R. 50-61), she requested and received a hearing before an ALJ, (R. 25). Ms. Aguilar, her husband, and a vocational expert testified at the hearing. She was represented by present counsel at the hearing. The ALJ denied her application. (R. 6-20). At step one, he found that Ms. Aguilar had not engaged in substantial gainful activity since her alleged onset date in November 2007. At step two, he found that she had the severe impairments of affective and anxiety-related disorders, fibromyalgia, and degenerative disc disease. He found that her alleged arthritis and GERD were not severe. At step three, he found that none of her impairments, singly or in combination, met or medically equaled any of the Listing of Impairments. He examined Listings 12.04, affective disorders, and 12.06, anxiety-related disorders. For steps four and five, the ALJ determined Ms. Aguilar's RFC. He found that she retained the capacity for light work with additional restrictions, the most significant of which are: **(1)** lift and carry at most 20 lbs. occasionally and 10 lbs. frequently; **(2)** stand and/or walk for no more than a total of about 6 hours in an 8-hour workday and for 15 minutes continuously; **(3)** sit for a total of no more than about 6 hours in an 8-hour workday; **(4)** must alternate sitting and standing at will; **(5)** can perform only simple, unskilled work where contact with others is routine, superficial, and incidental to the work performed; **(6)** no fast-paced production work; and **(6)** requires a work break approximately every 2 hours. At step four, the ALJ found that Ms. Aguilar did not have past relevant work.

Because Ms. Aguilar's non-exertional limitations interfered with her ability to perform substantially all the requirements at the light level of work, the ALJ called a vocational expert to testify at the hearing. Based on the ALJ's findings of a restricted RFC, her age, education, and skills, the vocational expert opined that Ms. Aguilar could perform jobs such as assembler, of which there are 2,400 in Indiana and 86,000 in the country. Based on these numbers of jobs, the ALJ found that Ms. Aguilar was not disabled. When the Appeals Counsel denied her petition for review, the ALJ's decision became the final decision of the Commissioner and the one that the Court reviews.

## Discussion

Ms. Aguilar asserts that the ALJ committed three errors.

**1. Fibromyalgia and chronic pain findings.** Ms. Aguilar states that the ALJ committed several errors in his findings regarding her fibromyalgia and pain, but she provides no factual or legal support for those statements to develop them into arguments. Thus, she has forfeited any arguments that could have been raised. The Court will not construct parties' arguments for them. While forfeited, the Court will also summarily review Ms. Aguilar's statements.

First, she first asserts that the ALJ acted without a medical advisor and, thus, based his decision only on his own layperson's expertise. In his decision, the ALJ discussed the medical evidence and opinions regarding Ms. Aguilar's impairments and limitations,

including those of the state-agency reviewers, the consulting physicians, and Ms. Aguilar's own physicians. Ms. Aguilar omits any argument or showing of the standard governing the calling of additional medical advisors or the need for an additional medical advisor in this case, and there is no indication of specific medical findings that the ALJ made solely on his own knowledge.

Second, Ms. Aguilar asserts that the ALJ failed to give controlling weight to her treating physicians' opinions that she is disabled. Again, she fails to even describe the applicable standard. It is well-settled that the opinions of treating physicians are not automatically given controlling weight. The ALJ's decision shows that he undertook an analysis and weighing of the medical findings and medical opinions and there is no argument or showing that his finding on a issue is erroneous for failure to accord controlling weight to Ms. Aguilar's physicians. It is also well-settled that the ultimate issue of disability is reserved to the Commissioner and that, while treating sources are to be considered and, under certain criteria, given controlling weight on matters such as diagnoses, signs and laboratory findings, and functional limitations, they are to be accorded no special weight on the ultimate question of disability. Thus, even if these reports contained opinions on whether Ms. Aguilar is disabled, those opinions would be irrelevant.

Third, Ms. Aguilar states that the ALJ selectively considered the reports of Drs. Hague, Nalini, and Farr, and ignored the report of Dr. Harsha, regarding their diagnoses

8

of fibromyalgia. It is well-settled that an ALJ need not discuss every item of evidence or all of the content in every item of evidence. The ALJ's decision adequately demonstrates that he considered the medical evidence of fibromyalgia and, in fact, that he accepted the diagnosis of fibromyalgia, finding it as one of Ms. Aguilar's severe impairments. If Ms. Aguilar meant to argue that the ALJ failed to give controlling weight to some other finding or opinion of these doctors, then she failed to identify that finding or opinion, or to show how it was material to a particular finding by the ALJ, or to argue how the particular findings are material to the issue of her disability.

Finally, Ms. Aguilar argues that the ALJ rejected her disability due to fibromyalgia solely because her alleged symptoms were not supported by objective medical evidence. She argues that this violates the principle that subjective symptoms, by their very character, cannot be substantiated by objective data. The only evidence that Ms. Aguilar cites to show that this was the sole ground for the ALJ's decision is his sentence that "In terms of the claimant's alleged impairments, the undersigned finds that the objective evidence does not support the subjective allegations." (R. 15.) Consistency of an applicant's reports of subjective symptoms with the objective medical evidence is a factor that, not only legitimately may, but must, be considered in evaluating a claimant's symptoms, 20 C.F.R. § 404.1529; S.S.R. 96-7p, and there is no indication — cited by Ms. Aguilar or evident in the ALJ's decision — that the ALJ found Ms. Aguilar's statements to be not entirely credible solely because of their inconsistency with objective medical evidence. In fact, the

9

indications are to the contrary: the one sentence quoted by Ms. Aguilar precedes three and one-half pages of discussion by the ALJ of medical and other evidence upon which a credibility determination must be based.

**2. Credibility finding.** Ms. Aguilar states that the ALJ's credibility determination must be reversed because "it is contrary to the evidence and contrary to Social Security Ruling 96-7p"; it is "perfunctory" and "boilerplate"; the ALJ "failed to cite any evidence in support of his conclusory statements"; and his credibility determination had "apparently intentional vagueness." There is no factual or legal development of these statements. Thus, because they do not rise to the level of argument, they are forfeited. In addition, on the Court's summary review, Ms. Aguilar's statements fail. After summarizing the standards governing credibility determinations and Ms. Aguilar's allegations of symptoms and functional limitations, the ALJ presented his ultimate credibility conclusion in one paragraph but followed it with pages of discussion and evaluation of evidence regarding the factors that are relevant to such a conclusion, *e.g.*, objective medical evidence, medical opinions, daily activities, alleviation techniques, and medications. The ALJ did not provide mere boilerplate or conclusory statements and his discussion was not perfunctory. Those adjectives better describe Ms. Aguilar's argument.

**3. Step-five determination.** Ms. Aguilar states that the ALJ erred by omitting any consideration of **(1)** her alleged need to lie down and stretch her arms and legs several times a day in his RFC assessment, and **(2)** the vocational expert's testimony that no jobs

10

exist for Ms. Aguilar if all of her alleged functional limitations are fully credited. Ms. Aguilar suggests no basis for finding that the ALJ "omitted consideration" of her allegation or the vocational expert's answer. She testified that she needs to lie down and stretch three times during the day, (R. 32, 34), and would take rest breaks every fifteen minutes when doing housekeeping, (R. 33). The ALJ specifically recognized these allegations in his decision. (R. 11, 15.) If Ms. Aguilar instead intended to argue that the ALJ erred, not by "omitting consideration" of her allegation, but by not fully crediting those allegations, then she has failed to support such argument. The ALJ's written decision shows that he recognized, considered, and rejected her allegations. Likewise, the ALJ did not "omit consideration" of the vocational expert's opinion in response to counsel's question at the hearing presenting all of Ms. Aguilar's alleged limitations. Rather, the ALJ did not find all of Ms. Aguilar's allegations entirely credible and relied instead on the vocational expert's opinion in response to the RFC and restrictions that the ALJ determined were credible. Ms. Aguilar has not shown error.

## Conclusion

For the reasons explained above, this magistrate judge recommends that the Commissioner's decision denying Ms. Aguilar's application for disability benefits and a declaration of a period of disability be **AFFIRMED**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be allowed.**

**DONE this date:** 08/15/2013

_____
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.